IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JANET FOWLER,

              Plaintiff,

                               CV 04-6224-RE

       vs.                      OPINION AND ORDER

JO ANNE B. BARNHART,
Commissioner of Social Security,

              Defendant.
_____

Kathryn Tassinari
Drew L. Johnson
1700 Valley River Drive, First Floor
Eugene, OR  97401

        Attorney for Plaintiff

Craig J. Casey
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902

1 -    OPINION AND ORDER

Franco L. Becia
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075

Attorneys for Defendant


REDDEN, Judge:

Plaintiff Janet M. Fowler brings this action pursuant to the Social Security Act (Act), 42 U.S.C. §§ 405(g), to obtain judicial review of the Commissioner's final administrative decision denying her application for disability insurance benefits (DIB) under Title II of the Act.  For the reasons set forth below, the Commissioner's decision is reversed and the case is remanded to the Commissioner for the payment of benefits.

## **PROCEDURAL BACKGROUND**

In March 1999, plaintiff filed her first application for DIB, alleging disability since February 1999 because of back, chest, legs, arms, and buttock pain.  The application was denied initially and upon reconsideration.  Plaintiff timely requested a hearing before an administrative law judge (ALJ).  At her September 12, 2000, hearing, plaintiff was represented by counsel and testified.  Plaintiff's husband Marian Ernest Fowler, III; her father-in-law Marian Ernest Fowler, Jr.; and vocational expert C. Kay Hartgrave also testified.  On September 28, 2000, the ALJ issued a decision denying plaintiff's application. The Appeals Council denied plaintiff's request for review, making the ALJ's decision a final decision.  On March 9, 2002, the U.S. District Court for the District of Oregon dismissed her appeal.


2 -    OPINION AND ORDER

In November 2000, plaintiff protectively filed her second application for DIB, alleging disability since February 1999 because of depression, back and neck pain, pain in sides, chest, buttocks, legs and arms; numbness; chronic headaches (sometimes migraines); comprehension and concentration problems; memory difficulty; irritable bowel; severe fatigue; dizziness; cold fingers and toes; blurred vision; ringing in ears; jaw pains; tingling in extremities; dry eyes; frequently dropping things; confusion; affected speech anxiety; frequently misplace or lose things; sleep disturbances; wild or bad dreams; awaken exhausted; unable to stay asleep; periods of extreme exhaustion; poor balance; loss of strength in arms and legs; frequent stumbling or tripping; foods taste different; low body temperature; sexual problems; mitral valve prolapse; digestive problems (heartburn); bad gas; food seems to "sit"' violent bowel movements; frequent urination; restless legal syndrome; fibrocystic breasts; chronic sinus problems; sensitivity to cold, heat, smells, lights, and noise; painful nodules in calves; and muscle spasms. Plaintiff met the nondisability requirements set forth in Section 216(i) of the Act and was insured for disability benefits through the date of the ALJ's decision. The application was denied initially and upon reconsideration. Plaintiff timely requested a hearing before an administrative law judge (ALJ). At her February 25, 2003, hearing, plaintiff was represented by counsel and testified. Plaintiff's father-in-law Marian Ernest Fowler, Jr.; friend Alice Bailey, and vocational experts C. Kay Hartgrave also testified. On March 21, 2003, the ALJ issued a decision finding plaintiff was not disabled within the meaning of the Act. The Appeals Council denied plaintiff's request for review, making the ALJ's decision a final decision.

Plaintiff was born in 1959 and was 43 years old at the time of the hearing decision. She completed a high school education and an Associate of Arts degree in legal science. Her past work had been as a bookkeeper (sedentary, skilled); legal secretary (sedentary, skilled); computer operator (sedentary, semiskilled); cashier II (light, unskilled to semiskilled); secretary (sedentary, skilled); housekeeper (light, unskilled); loom tender (light, semiskilled); cleaner - meat packing (medium, unskilled; and rollup operator (light-medium, unskilled. She has not performed substantial gainful activity since her alleged onset of disability.

## STANDARD OF REVIEW

### A.    Substantial Evidence.

This court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the Commissioner's conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

## B.     **The Sequential Process.**

The Commissioner has established a five-step sequential process for determining whether a person is disabled.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502, 416.920.  In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity."  If so, the claimant is not disabled.  Bowen v. Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments."  Bowen v. Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(c), 416.920(c).  If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity."  Id.; see 20 C.F.R. §§ 404.1520(d), 416.920(d).  If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four.  Bowen v. Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant can still perform "past relevant work."  20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant can work, she is not disabled.  If she cannot perform past relevant work, the burden shifts to the Commissioner.

In step five, the Commissioner must establish that the claimant can perform other work in the national economy.  Bowen v. Yuckert, 482 U.S. at 141-42; see 20 C.F.R.

§§ 404.1520(e) & (f), 416.920(e) & (f).  If the Secretary meets this burden and proves that the claimant is able to perform other jobs which exist in significant numbers in the national economy, she is not disabled.  20 C.F.R. §§ 404.1566, 416.966.

## ALJ'S DECISION

The ALJ found, in relevant part, that:

(1)  Plaintiff has the following severe impairments:  fibromyalgia and affective mood disorder.  These impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4;

(2)  Plaintiff's allegations regarding her limitations are credible to the extent they are supported by the medical evidence.

(3)  Plaintiff has the residual functional capacity to perform light work activity that does not involve public contact or close interaction with co-workers.  Plaintiff's functional capacity includes the ability to perform simple, routine instructions and tasks.  She has moderate restrictions of activities of daily living, moderate difficulties maintaining social functioning, mild difficulties maintaining concentration, persistence or pace, and no episodes of decompensation.

(4)  Plaintiff is able to perform her past relevant work as a housekeeper.

Tr. 203-04.

## PLAINTIFF'S DESIGNATIONS OF ERROR

Plaintiff argues that the ALJ erred in:

1.  The rejection of the opinion of plaintiff's treating rheumatologist;

2.  The rejection of plaintiff's testimony; and

3.  The determination that plaintiff has the residual functional capacity to work in her past work as a housekeeper.

## **DISCUSSION**

Plaintiff's extensive medical record is summarized in the parties' pleadings and is essentially undisputed.

In his decision, concluded plaintiff his fibromyalgia, and that it is a severe impairment. Nevertheless, the ALJ rejected the opinion of Dr. William Maier, plaintiff's treating rheumatologist, that plaintiff was "obviously completely disabled by her degree of symptomatology." Tr. 409. The ALJ concluded the medical record does not support the degree of symptomatology (*i.e.*, pain) and limitations alleged by plaintiff. For this conclusion, the ALJ cited to findings in the record by both Drs. Maier and Bennett that indicate, among other things, plaintiff has no neurological problems, no nystagmus, no cyanosis, clubbing, or edema, plus a full range of motion of her wrists, elbows, shoulder, and spine, hips, and knees. The ALJ also stated that Dr. Maier "is not qualified to express opinions on vocational matters that are outside of his certified medical expertise." Tr. 200. The ALJ went on to say that "Dr. Maier's opinion regarding the issue of disability is not supported by his own relatively benign clinical findings or by the stable objective signs reported by other medical sources of record." Id. Therefore, the ALJ gave Dr. Maier's opinion little evidentiary weight. Id.

The ALJ is responsible for resolving conflicting medical evidence. Thomas v. Barnhart, 278 F.3d 947, 956-57 (9th Cir. 2002). Even so, an ALJ may not reject a treating doctor's opinion unless he makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). If a treating doctor's medical opinion is supported by medically

acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating doctor's opinion is to be given controlling weight. Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(d)(2). Where a treating doctor's opinion is uncontroverted, the ALJ may reject it only for "clear and convincing" reasons supported by substantial evidence in the record. Id.

In this case, the ALJ should have given significant weight to the opinion of plaintiff's treating rheumatologist, Dr. Maier, including Dr. Maier's assessment of the limitations suffered by plaintiff because of her condition. Fibromyalgia is a condition the courts and agencies must approach carefully because it is poorly understood and cannot be diagnosed with laboratory testing or clinical neurological examinations. As the Ninth Circuit has stated:

> Fibromyalgia's cause is unknown, there is no cure, and it is poorly-understood within much of the medical community. The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms. The American College of Rheumatology issued a set of agreed-upon diagnostic criteria in 1990, but to date there are no laboratory tests to confirm diagnosis.

Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004).

It was error for the ALJ to, in effect, require plaintiff to produce objective evidence of her fibromyalgia condition. Whether she shows clinical evidence of neurological problems or musculoskeletal disease is irrelevant. Plaintiff's allegations of her limitations stem from her fibromyalgia and there is no issue whether she has fibromyalgia. Dr. Maier diagnosed the condition, and noted widespread triggering. Tr. 408-09. In addition to Dr. Maier, Dr. Robert Bennett, a leading expert in the field, diagnosed plaintiff with fibromyalgia, noting 18 out of 18 tender points. Tr. 508-09. Indeed, the ALJ has accepted she has

fibromyalgia and that it is a severe impairment, only disputing her allegations of limitations caused by the disease.

The ALJ failed to give legally adequate reasons for rejecting Dr. Maier's opinion. He was required "to give weight not only to the treating physician's [Dr. Maier's] clinical findings and interpretation of test results, but also to his subjective judgments." Lester v. Chater, 81 F.3d 821, 832-33 (9th Cir. 1995). In fact, in the case of conditions such as fibromyalgia, rheumatology is the applicable medical specialty, and the treating rheumatologist's opinion is to be given greater weight than the opinions of other doctors. It is an "opinion of a specialist about medical issues related to his or her area of speciality." 20 C.F.R. § 404.1527(d)(5); Benecke v. Barnhart, 379 F.3d at 594 n.4. Dr. Maier's statement that plaintiff was "obviously completely disabled by her degree of symptomatology" is not a vocational issue, but rather is the rheumatologist's subjective judgment of plaintiff's ability to function. I agree with plaintiff that the the ALJ's characterization of Dr. Maier's clinical findings as "benign" is his own inference and is not based on any contradictory evidence in the record. See Morales v. Apfel, 225 F.3d 310, 317 (3rd Cir. 2000). Dr. Maier's clinical findings included a finding of widespread triggering (Tr. 409), which supports a diagnosis of fibromyalgia that the ALJ accepted. Again, the diagnosis is not at issue in this case.

As to plaintiff's allegations of her limitations, the ALJ found them to be "credible to the extent that they are supported by the medical evidence." Tr. 204. Plaintiff testified that she has chronic pain and fatigue. Her irritable bowel syndrome is very problematic. She has migraine headaches and continues to suffer from depression even though she takes an antidepressant.

9 -    OPINION AND ORDER

She testified her condition has deteriorated since February 1999.  Her pain is more severe and migraines are more frequent.  The frequency of her migraines varies, sometimes as often as five days out of seven.  She has two or three days at most between headaches.  When a headache starts, she tries to take medication before it gets really bad, and she lies down to try to relax.  Her headaches usually last about a day at a time.  About twice a week, her migraines are so severe that she cannot do anything but go to the bathroom and return to bed.

She needs help to do housework, cooking, and shopping.  She tries to do the shopping if she simply needs milk and bread.  Sometimes her father-in-law goes to the store for her.  Sometimes she goes to the store with her father-in-law, but cannot last through the shopping process. He vacuums for her and helps with other household chores.  She does not drive when she has a migraine.  Friends take her to doctor appointments.

Plaintiff testified that she felt that once in a while she could work two to four hours in a day.  She uses a cane to help her keep her balance.  She tries to move every 15 to 20 minutes so that she does not sit or stand for too long a time, which aggravates the pain.  She lies down in the morning for an hour or an hour and a half, and then in the afternoon for about the same amount of time.  She goes to a Bible study group once a week if she can, but there are weeks that she cannot manage it.


In deciding whether to accept a claimant's subjective symptom allegations, the ALJ first must determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms

alleged.  <u>Cotton v. Bowen</u>, 799 F.2d 1403 (9th Cir. 1986).  Next, if there is such evidence, and there is no affirmative evidence of malingering, the ALJ can reject a claimant's allegations only if the ALJ provides clear and convincing reasons to discredit such allegations.  <u>Smolen v. Chater</u>, 80 F.3d at 1281-82.  Plaintiff asserts that because there is no evidence of malingering, the ALJ failed to meet the standard of providing "clear and convincing reasons" to discredit her testimony and that it should be credited as a matter of law.

First, the ALJ concluded there was no objective evidence to justify the level of pain alleged by plaintiff.  I disagree.  There is objective medical evidence that supports her diagnoses of fibromyalgia, cervical spondylosis, irritable bowel, migraines, and dysthymia or an adjustment disorder.  The law requires her to produce objective evidence of an underlying impairment that can reasonably be expected to produce the pain or symptoms alleged, not that her impairment would make her symptoms inevitable.  *See* <u>Cotton v. Bowen</u>, 799 F.2d at 1403; <u>Howard v. Heckler</u>, 782 F.2d 1484, 1488 (9th Cir. 1986).  She has done so.  The regulations specifically prohibit rejecting subjective pain testimony solely on the basis of objective medical evidence.  20 C.F.R. §§ 404.1529(c)(2) and 416.929(c)(2).  In this record, there is objective medical evidence that supports the diagnosis of fibromyalgia and her allegations of symptoms, including triggering and tender points noted by two rheumatologists.  Further, Dr. Maier wrote that the fibromyalgia diagnosis was "the explanation for her chronic headaches, irritable bowel symptoms, and generalized musculoskeletal pain."  Tr. 409.  Plaintiff also asserts that her diagnosis with cervical spondylosis provides objective evidence of her neck and arm pain.  Tr. 471.

Second, the ALJ stated there was no evidence that her use of a cane was prescribed or suggested by any of her treating doctors. Tr. 203. While it is not disputed that a cane has not been prescribed, on April 22, 2002, Dr. Greenberg stated she is permanently unable to walk without the use of, or assistance from, a brace, cane, crutch, or other device. Tr. 477. Her use of a cane is not evidence of overreaction or malingering.

Third, the ALJ found that although plaintiff is more restricted in her activities than she once was, by her own testimony and that of her witnesses, she retained the ability to regularly attend Bible studies, regularly attend a support group, socialized at least three to four times per week, take her dogs to the park for runs, and do some amount of housework. Tr. 203. He found she can shop, walk at least two blocks, read books and the newspaper, garden, watch movies, and crochet. Id.

I conclude that the ALJ's characterization of her daily activities does not show an ability to sustain competitive work. The record indicates her daily activities are limited and carried out with difficulty. The Ninth Circuit has stated that:

> This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability. One does not need to be "utterly incapacitated" in order to be disabled.

Benecke v. Barnhart, 379 F.3d at 594. *See also* Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (a plaintiff is not required to demonstrate she has conditions that completely debilitate her). Plaintiff admits her condition would permit her to work for brief periods of time throughout the work week, but asserts that she is disabled from competitive, sustained work. The record provides little support for the ALJ's credibility determination.

The decision whether to remand for further proceedings or an award benefits

outright is left to the discretion of the court. <u>Reddick v. Chater</u>, 157 F.3d at 728. A remand for further administrative proceedings is appropriate if enhancement of the record would be useful. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178 (9th Cir. 2000). Where the record has been developed fully and further administrative proceedings would serve no useful purpose, the court should remand for an immediate award of benefits. <u>Smolen v. Chater</u>, 80 F.3d at 1292. The court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were the evidence credited. <u>Harman</u>, 211 F.3d at 1178. Under this test, I conclude Dr. Maier's opinion and plaintiff's allegations about the limitations she experiences because of her fibromyalgia must be credited as a matter of law. First, as discussed above, the ALJ failed to give legally sufficient reasons for not giving significant weight to Dr. Maier's opinion and for discrediting plaintiff's allegations about her limitations. Second, I conclude there are no outstanding issues that must be resolved before a determination of disability can be made. It is clear from the record that the ALJ would be required to find plaintiff disabled if the evidence is properly credited. I conclude plaintiff has established that she cannot perform

her past relevant work or any other gainful work that exists in the national economy. Therefore, I need not return the case to the Commissioner for further proceedings.

## <u>CONCLUSION</u>

13 -    OPINION AND ORDER

The Commissioner's decision is REVERSED and the case is REMANDED to the Commissioner for the payment of benefits.

IT IS SO ORDERED.

Dated this 14th day of July, 2005.

        /S/ James A. Redden         
        James A. Redden
        United States District Judge